Diane Lee SIGLER, Plaintiff,

v.

MUTUAL BENEFIT LIFE INSURANCE COMPANY, Defendant.

Civ. No. 80–100–A.

United States District Court,
S. D. Iowa, C. D.

Jan. 23, 1981.

James A. Lorentzen, Theodore T. Duffield and Jeffrey A. Boehlert of Patterson, Lorentzen, Duffield, Timmons, Irish & Becker, Des Moines, Iowa, for plaintiff.

David W. Belin, Charles D. Hunter and Ann Marie Williams of Belin, Harris, Helmick & Lovrien, Des Moines, Iowa, for defendant.

## RULING AND ORDER

STUART, Chief Judge.

On October 15, 1980, plaintiff filed a Motion for Summary Judgment which was resisted by defendant on October 28, 1980. Defendant filed a Cross-Motion for Summary Judgment on October 24, 1980 which plaintiff resisted on November 17, 1980. A hearing was held on these motions on January 16, 1981. Appearances are noted in the Clerk's minutes.

Plaintiff, Diane Lee Sigler ("Mrs. Sigler"), initiated this action against defendant Mutual Benefit Life Insurance Company ("Mutual") seeking to recover the proceeds of a $50,000 accidental death group insurance plan under which her husband was covered as a partner in the accounting firm carrying the group coverage. Mrs. Sigler additionally claims entitlement to over $1,000,000 in actual and punitive damages resulting from defendant's denial of her claim under the accidental death provisions of the group policy on the grounds (1) that defendant acted in bad faith in so denying the claim, and (2) that defendant intentionally inflicted emotional distress on her. Plaintiff in her summary judgment motion seeks judgment only on her claim of benefits under the accidental death provisions of the insurance agreement. In its cross-motion, however, the defendant requests that judgment be entered in its favor on each of plaintiff's claims.

The facts before the Court are not in dispute. On or about August 16, 1979, plaintiff's husband was found dead in the bathroom of his hotel room in Denver, Colorado where he was attending a seminar. Both parties concede that plaintiff's husband's death was not the result of suicide or foul play; instead, it is agreed that his death resulted from an autoerotic experience. It is agreed that Mr. Sigler died by asphyxiation while attempting to increase sexual gratification from masturbation. The autoerotic practice involves the participant "hanging" himself by the neck, creating an asphyxial state, in an attempt to stimulate nerve centers in the brain and heighten the masturbation experience.

## I. *BENEFITS CLAIM*

The Court first will address plaintiff's claim for benefits under the accidental death provision of the insurance agreement. The issue to be resolved in considering this claim is whether death resulting from such autoerotic experience is an accidental death under the terms of the insurance agreement and Iowa law.

The relevant portions of the insurance agreement provide:

ACCIDENTAL DEATH BENEFIT: If accidental bodily injury sustained by a person insured under the Policy results, directly and independently of all other causes, in his death within ninety days after the date of such injury, the amount of insurance otherwise payable upon the death of the person insured under the Policy will be increased by the applicable Accidental Death and Dismemberment Benefit Principal Sum referred to in the Schedule of Insurance of this Certificate, subject to the further provisions and limitations hereafter stated.

RISKS NOT ASSUMED: Accidental death or dismemberment is not a risk assumed under the Accidental Death or Dismemberment provisions of the Policy if it results directly or indirectly from:

544

(f) intentionally, self-inflicted injury of any kind, while sane or insane.

■ Under the law of the State of Iowa, it is clear that the meaning of "accident" or "accidental" for purposes of accidental death insurance benefits is to be determined in the context of the terms common sense or ordinary usage.

One thing, at least is well settled: the words 'accident' and 'accidental' have never acquired any technical meaning in law, and when used in an insurance contract, they are to be construed and considered according to the common speech and common usage of the people generally.

*Lickleider v. Iowa State Traveling Mens' Ass'n*, 184 Iowa 423, 428, 166 N.W. 363, 365, as mod'f 168 N.W. 884 (1918). The Supreme Court of Iowa, in defining these terms in light of their common meaning, stated ". . . if the insured does a voluntary act, the natural, usual, and to be expected result of which is to bring injury upon himself, then a death so occurring is not an accident in any sense of the word, legal or colloquial, . . .". *Lickleider*, 166 N.W. at 366. In the same year, the Supreme Court of Iowa again faced the issue of defining "accident" or "accidental" and held:

[H]e must have known and appreciated the danger, or the risk must have been so apparent that, as an ordinarily reasonable man, he must be held to have known and appreciated it, and with the knowledge have intentionally taken the risk.

*Rowe v. United Commercial Travelers Ass'n*, 186 Iowa 454, 464, 172 N.W. 454, 458 (1919).

The Eighth Circuit Court of Appeals has also considered the definition of "accident" for purposes of accidental death insurance policies under Iowa law. Most recently in *Estate of Wade v. Continental Insurance Co.*, 514 F.2d 304, 307 (1975), the Circuit Court stated:

Iowa follows the general rule that the determination of whether an injury is accidental must be made from the point of view of the insured and what he intended or should reasonably have expect-ed. *Comfort v. Continental Cas. Co.*, 239 Iowa 1206, 34 N.W.2d 588 (1948); *Lickeider v. Iowa State Traveling Men's Ass'n*, 184 Iowa 423, 166 N.W. 363, 168 N.W. 884 (1918).

The word 'accident' * * * means happening by chance, unexpectedly taking place, not according to the usual course of things.

. . . [I]f the insured does a voluntary act, the natural and usual, and to be expected result of which is to bring injury upon himself, then a death so occurring is not an accident. But if the insured does a voluntary act, without knowledge or reasonable expectation that the result thereof will be to bring injury upon himself from which death may follow, then a bodily injury resulting in death is caused by an accident.

*Continental Cas. Co. v. Jackson*, 400 F.2d 285, 288 (8th Cir. 1968).

See also *Jackson v. Continental Casualty Co.*, 400 F.2d 285, 288 (8th Cir. 1968).

■ Applying these principles to the undisputed facts, the Court is of the opinion that plaintiff's husband's death was not an accident since a reasonable person would have recognized that his actions could result in his death. The Court finds that a reasonable person would comprehend and forsee that placing a noose around his neck and subsequently hanging himself with the noose for the purpose of inducing asphyxia could result in his death. Certainly, the record indicates that plaintiff's husband did not intend to cause his own death, but, under the circumstances, he reasonably should have expected that his actions could be fatal.

This Court's conclusion is consistent with the Fourth Circuit Court of Appeal's decision in *Runge v. Metropolitan Life Insurance Company*, 537 F.2d 1157 (1976). In *Runge*, the court had before it facts and circumstances nearly identical to those presently in issue. The plaintiff therein initiated suit against an insurance company to recover accidental death benefits upon the death of her husband that resulted from an autoerotic practice in which he sought to

increase sexual gratification from masturbation by hanging himself to induce asphyxia. The circuit court affirmed the district court's granting of the insurance company's motion for summary judgment, concluding that the person's death was not accidental:

> Runge deliberately placed his neck into a noose which he himself had designed and constructed, having first locked the doors to his house to prevent intrusion, and at a time when interruption was unlikely. He then intentionally and deliberately self-induced asphyxia by hanging himself in the noose, lost consciousness, and died. Death, under these circumstances, was a natural and foreseeable, though unintended, consequence of Runge's activity.

*Runge*, 537 F.2d at 1159.

Based upon the foregoing discussion, the Court must find that plaintiff's husband's death was not accidental under the terms of the applicable insurance agreement and the law of the State of Iowa.

▪ Even if Mr. Sigler's death was found to be accidental within the meaning of the policy, recovery would be barred by the clause excluding from coverage an "intentionally, self-inflicted injury of any kind". Although Mr. Sigler did not intend to produce the unconsciousness that resulted in his death, his voluntary acts were intended to temporarily restrict his air supply to heighten the sensations of masturbation. Therefore, the elements of "intentionally, self-inflicted" are satisfied. The only question remaining is whether self-inflicted hanging is an "injury of any kind". The Court believes that it is. If someone else had placed Mr. Sigler in the same position as he placed himself to temporarily restrict his ability to breathe, it would have been an injury. In the Court's opinion, it continues to be an injury even when it is self-inflicted.

Therefore, plaintiff's motion for summary judgment is denied, and defendant's motion is granted insofar as it requests judgment on plaintiff's claim for insurance benefits.

## II. *TORT CLAIMS*

Defendant next requests entry of judgment in its favor on plaintiff's claims that defendant acted in bad faith in denying the accidental death benefits and intentionally inflicted severe emotional distress on Mrs. Sigler.

▪ As defendant indicates in its brief in support of its motion, recovery on the basis of a claim of an insurer's breach of its duty of good faith can be had if the insurer acts "maliciously and without probable cause". *Amsden v. Grinnell Mutual Reinsurance Company*, 203 N.W.2d 252, 254 (Iowa 1972). Further, an insurer is liable for the intentional infliction of emotional distress only when its conduct is "outrageous", Id. at 255, which requires a showing that the conduct exceed "all bounds usually tolerated by decent society". *Meyer v. Nottger*, 241 N.W.2d 911, 918 (Iowa 1976).

▪ Upon a review of the record, the Court must grant defendant's motion for summary judgment on plaintiff's tort claims since there is no evidence that defendant acted maliciously or outrageously in denying plaintiff's claim for accidental death benefits.

Plaintiff contends that the defendant acted maliciously by failing to investigate adequately her husband's state of mind prior to his death before denying the accidental death benefits. She further argues that Mutual's failure to so investigate resulting in the rejection of her claim forced her to initiate this legal action, exposing her to public embarrassment because of the nature of the case, which constitutes outrageous conduct on its part.

Thus, plaintiff's punitive damage claim is based upon the fact that all parties agree Mr. Sigler did not intend to kill himself, and plaintiff concludes therefrom that his death under the law must be considered accidental. She ignores, however, the objective "reasonable man" test for defining this term upon which Mutual relied in denying the accidental death claim after an extensive review of the applicable law. Therefore, the Court is not faced in this case with

the rejection of an insurance claim based upon an insurance company's reliance on an untenable legal position. Instead, as the Court so finds in this Order, Mutual's position was wholly supported by the applicable law. Therefore, the record indicates that Mutual acted in good faith and with reasonable cause in denying plaintiff's claim for benefits under the accidental provision of the insurance certificate.

IT IS THEREFORE ORDERED that plaintiff's Motion for Summary Judgment is denied.

IT IS FURTHER ORDERED that defendant's Motion for Summary Judgment is granted, and the Clerk is directed to cause judgment to be entered in defendant's favor on all of plaintiff's claims.